NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JAIME UGAY,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI,**
**SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7069

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 08-4295, Chief Judge Bruce E. Kasold.

---

Decided: August 9, 2011

---

JAIME UGAY, of Surigao City, Philippines, pro se.

P. DAVIS OLIVER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M.

HUGHES, Deputy Director. Of counsel on the brief was MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, United States Department of Veterans Affairs, of Washington, DC.

_____

Before NEWMAN, PROST, and REYNA, *Circuit Judges*.

PER CURIAM.

Jaime Ugay appeals the United States Court of Veterans Claims ("Veterans Court") affirmance of the decision of the Board of Veterans' Appeals ("Board") denying entitlement to burial benefits. Because Mr. Ugay does not raise any issues on appeal that fall within our jurisdiction, we *dismiss*.

BACKGROUND

Mr. Ugay applied for Department of Veterans Affairs ("VA") burial benefits following the death of his father-in-law, Felimon A. Elacion. Mr. Elacion, the veteran, served in the Philippine Commonwealth Army from September 1941 to May 1942 and with the Recognized Guerrillas and Combination Service from February 1943 to April 1946. Mr. Elacion died in March 2005; he was eighty-nine years old. The death certificate listed the immediate cause of death as multi-organ failure, with old age contributing to death. At the time of his death, Mr. Elacion had established service connection for affective psychosis.

Mr. Ugay sought burial benefits on the grounds that the actual cause of Mr. Elacion's death was affective psychosis, and that pulmonary tuberculosis ("TB pneumonia") not multi-organ failure due to old age was the

contributing factor.[1]  In support of his claim, Mr. Ugay offered affidavits from two physicians:  the physician who signed Mr. Elacion's death certificate and a physician who had treated Mr. Elacion.

In her affidavit, the physician who signed the death certificate affirmed that she had listed the immediate cause of death as "Immediate cause-multiorgan failure" and the contributing cause of death as "old age."  The physician further affirmed that Mr. Elacion's cause of death was actually affective psychosis with TB Pneumonia as a contributing factor.  In a subsequent statement, the physician explained that her initial conclusion of multi-organ failure as a result of old age was due to the fact that she was not Mr. Elacion's attending physician and had no additional medical history before her:

> With the limited information about the deceased and not being able to attend the deceased, I therefore considered the old age of the deceased and his being bedridden already as a significant condition contributing to the death as well as the one that could lead to multiorgan failure common in the elderly, hence the cause of death in the death certificate.

Mr. Ugay also submitted an affidavit by one of Mr. Elacion's attending physicians which provided that Mr. Elacion "was confined and treated by my father, the late Dr. Pio Castro from TB Pheumonia (sic) sometime in 1951 and I can vividly recall it for I am a living witness to it." The physician further attested that Mr. Elacion had

---

[1]    In order for burial benefits to be awarded on this basis, Mr. Ugay also had to demonstrate that Mr. Elacion's TB pneumonia was service connected.

suffered from TB pneumonia up until his death and that this illness significantly contributed to his death.

The physician briefly addressed the issue of Mr. Elacion's affective psychosis, concluding that affective psychosis contributed to Mr. Elacion's TB pneumonia.

The Regional Office ("RO") requested a medical opinion from a VA physician concerning whether Mr. Elacion's service-connected affective psychosis materially caused or contributed to his death. The VA physician reviewed the private medical records, service medical records, and VA examination records and concluded that Mr. Elacion's death was not caused by or the result of affective psychosis and was not service connected.

Mr. Ugay appealed the RO's decision to the Board, contending that Mr. Elacion died as a result of service-connected affective psychosis and TB pneumonia. The Board concluded that "the death certificate and VA examiner's opinion are more probative [than the private medical statements]. The VA examiner reviewed all records in the claims file and opined that affective psychosis was not a primary or contributing cause of the veteran's death as the veteran's death was not premature." The Board further found that Mr. Elacion's TB pneumonia was not service connected:

> No probative evidence was provided substantiating assertions that PT [sic] pneumonia was caused by or incurred in service or caused by a service connected disability. The service treatment records are void of any findings, symptoms, complaints, or diagnoses of pulmonary tuberculosis and/or pneumonia. . . . In the absence of credible medical evidence linking the veteran's

> pulmonary tuberculosis to a documented disease,
> event, or injury in service, service connection for
> TB Pneumonia as the cause of death must be de-
> nied.

Accordingly, the Board held that the preponderance of the evidence was against Mr. Ugay's claim and, therefore, the cause of Mr. Elacion's death was not service connected.

Mr. Ugay appealed the Board's determination to the Veterans Court, alleging that the Board had clearly erred in its determination that the preponderance of the evidence was against his claim; inadequately stated the reasons or bases for its decision; misapplied the law; failed to ensure that a medical examination was provided; and failed to adjudicate an unrelated claim.[2]

The Veterans Court concluded that the record did not support Mr. Ugay's arguments. The court noted that to establish clear error in the Board's weighing of the evidence, Mr. Ugay had to demonstrate that based on the record as a whole, the Board's assignment of weight was not plausible. The court observed that the Board relied on the certified cause of death as being organ failure and old age, as well as a VA medical opinion that Mr. Elacion's death was not premature and that his service-connected affective psychosis was not a primary or contributing cause of his death. The Veterans Court found no error in the Board's application of the law.[3]

---

[2]  Mr. Ugay also sought sanctions against the Board, which the Veterans Court denied. The sanctions request is repeated on appeal. Given the disposition of the current action, the request is moot.

[3]  The Veterans Court noted that Mr. Ugay's filing with the Veterans Court may constitute an informal claim for such benefits and that Mr. Ugay and the Secretary of

Mr. Ugay now appeals the Veterans Court's determination.

### DISCUSSION

Our review of decisions by the Veterans Court is limited. Pursuant to 38 U.S.C. § 7292(a), we may only review "the validity of a decision of the [c]ourt on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on" by the Veterans Court. We have jurisdiction to "decide all relevant questions of law, including interpreting constitutional and statutory provisions." 38 U.S.C. § 792(d)(1). We cannot, absent a constitutional issue, "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2).

Mr. Ugay first contends that the Board relied on an invalid death certificate. According to Mr. Ugay, because the signing physician subsequently indicated that "[l]ater it was known that said Felimon A. Elacion's cause of death is affective psychosis with TB Pneumonia as a contributing factor," the death certificate relied on by the Board is invalid, because it states that the cause of death was multi-organ failure due to old age. The Board was not moved by the physician's later statement and concluded that there was "[n]o rationale or evidence . . . provided" to support the assertion that the veteran in fact died of affective psychosis with TB pneumonia as a contributing factor.

---

Veterans Affairs should pursue this potential claim. The disposition of the present appeal should not be read as limiting any such informal claim.

Mr. Ugay also argues that the Board failed to properly evaluate the evidence of service connection for TB-pneumonia, but Mr. Ugay does not explain how the Board failed to do so. Rather, Mr. Ugay simply states that the Board should have given more weight than it did to the physician statement that Mr. Elacion had been treated for TB pneumonia since 1951.

In essence, Mr. Ugay argues that the Board and Veterans Court erred by giving the death certificate and the VA medical opinion more probative value than the private physicians' medical statements. Any disagreement with the Board's weighing of the evidence is merely a disagreement with the Board's fact-based determination, which we lack jurisdiction to review. *See Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010) ("The evaluation and weighing of evidence and the drawing of appropriate inferences from it are factual determinations committed to the discretion of the fact-finder.").

Because Mr. Ugay has not raised an issue within our jurisdiction, the appeal is *dismissed*.

**DISMISSED**

COSTS

No costs.